LOCHTE v. MAGGIORE

(February 15, 1932. Opinion and Decree.)

Julius Howard Wiener, of New Orleans, attorney for plaintiff, appellant.

Giuffre & Gillane, of New Orleans, attorneys for defendant, appellee.

HIGGINS, J. This is a suit on a written contract by the principal to recover from his agent the sum of $200.90, alleged to be due for certain automobile tires delivered by the plaintiff to the defendant under the contract for the purpose of sale.

The defense is that the document sued upon is a contract of bailment and that, as the automobile tires were destroyed in the defendant's place of business by fire through no fault or negligence on his part, he is not liable.

There was judgment dismissing the suit and the plaintiff has appealed.

The contract sued upon reads as follows:

"Contract and agreement entered into by and between Alvin H. Lochte, hereinafter referred to as the Principal, and L. Maggiore, hereinafter referred to as Agent, Witnesseth:

"Whereas, the said Principal agrees that he will, from time to time, consign to his said agent, Mohawk tires and automobile accessories, in the quantities and in the amounts as Principal may see fit so to do, and entrust the same to the care of his said Agent to sell and dispose of, in the manner hereinafter set forth, now it is hereby agreed as follows:

"1. The said Principal will consign, from time to time, in the quantities and in the amounts as the said Principal may see fit, to his said Agent, Mohawk automobile tires and accessories, and will invoice them to him, delivering the invoice along with the merchandise so consigned, the agent shall be permitted to sell, in the most advantageous manner possible to himself, the said merchandise, and shall be permitted to retain, as his commissions, from the said sales, any amounts over the invoice price of the said merchandise.

"2. The agent warrants and understands that title to this property shall always remain with the Principal, and that upon the

sale of such property the title to the invoice price of the said merchandise shall remain in the Principal.

"3. The agent further agrees that no sales will be made of this merchandise for other than cash upon delivery, and that should he sell for other than cash he will be illegally disposing of property entrusted to him, unless he shall always keep on hand and promptly turn over to the said Principal immediately following said sale, the sum sufficient to cover any such property sold for a credit.

"4. The said agent agrees to render the said Principal just and proper accounts of any and all sales effected by him, and of all sums received and paid by him in respect to goods, and shall keep books and accounts covering all of such transactions, which said books shall be deemed the property of the said Principal.

"5. The said agent agrees not to confuse the merchandise to be consigned to him with any other merchandise, and acknowledges that such a confusion by himself will amount to illegal conversion if the said merchandise is not accounted for or produced as is hereinafter set forth.

"6. It is mutually agreed that the Principal shall, at all times, be at liberty, either personally or by agent duly authorized by him, to inspect or carry away all or any part of said goods, remaining unsold wherever the same may then be, and all books and accounts kept by the said agent, as above provided, and all securities, documents, vouchers, and writings held by him relating to his said agency, or to make and carry away any copies of or extracts from such books and writings.

"7. The said agent agrees that promptly upon any inspection made, immediate payment will be made to the said Principal for any goods checked short and not present in his premises for any reason whatsoever.

"8. The said agent takes cognizance of the law which makes it embezzlement for the agent to use, as his own, the money due his principal for any merchandise consigned hereunder, and acknowledges that should be ever fail to so account to his principal, immediately upon demand, that the said principal shall be warranted in taking action, either civilly or criminally as he may see fit, on account of such ac-

tion by the said agent."

(Signatures)

It is agreed between the parties that the contract was entered into between them; that the tires in question were delivered to the defendant's place of business and were destroyed by fire, while there, through no fault or negligence on the part of defendant; and that the agreement sued upon is a contract of bailment.

The sole question in the case is: What is the proper interpretation and meaning of paragraph 7 of the contract?

The plaintiff contends that the parties intended that the defendant would be responsible for the value of the merchandise in the event of its loss or destruction "for any reason whatsoever." Defendant argues that the true meaning of the contract and intention of the parties was that the defendant would be responsible for any merchandise checked short and "not present in his premises for any reasons whatsoever" due to his fault or negligence.

This court has held that, in the absence of a special contract, an ordinary bailee for hire is not an insurer of the loss of the property through fire, theft, or inevitable accident, without negligence on his part. Hartford Fire Ins. Co. v. Doll, 5 La. App. 228. So that, if the defendant is to be held liable, it can only be done under the provisions of paragraph 7 of the contract.

We do not believe that the language relied on by the plaintiff is clear and definite enough to say that it was the intention of the parties that the defendant would assume responsibility for the loss of the goods through fire, theft or inevitable accident, with or without fault on his part. If the parties had intended to place such a serious and severe responsibility upon the bailee, then language clearly and un-

equivocally conveying that meaning should have been used. Since the clause relied upon is not clear and definite enough in its wording to clearly indicate the intentions of the parties, resort can be had to other provisions of the contract to ascertain what was the true intention of the parties. See articles 1948, 1950, 1956 and 1958 of the Revised Civil Code. From a reading of the contract it is clear that the defendant was to be solely and only agent for the sale of the tires furnished by the plaintiff; that title to the merchandise and the money derived from the sale thereof was to remain in the plaintiff and that, should the defendant appropriate any of the goods for his own use, or confuse them with his own, it would be an illegal conversion and, in the event that he used any of the funds covering the invoice price of the tires, he would be guilty of embezzlement. The contract is silent as to who should insure the merchandise against loss by fire, theft or inevitable accident and, as the plaintiff was the one who clearly had the right to protect his interest against such events by insurance, it is very difficult for us to believe that it was the intention of the parties to place the heavy responsibility and burden, as an insurer against such risks, upon the defendant, who was simply acting as agent.

Furthermore, as it appears that the contract was prepared by the plaintiff, any ambiguity or uncertainty therein should be construed against him under well recognized rules of interpretation of contracts.

We conclude that the parties intended and contemplated that the defendant would be responsible for the loss of the merchandise through fire only in the event that he was at fault, or negligent. Since it is admitted that he was blameless, the judgment will be affirmed.

For the reasons assigned, the judgment appealed from is affirmed.